**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| M.F., | : | Civil Action No. 24-cv-4597 (SRC) |
|  | : |  |
| Plaintiff, | : | OPINION |
|  | : |  |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

**CHESLER**, District Judge

      This matter comes before the Court on the appeal by Plaintiff M.F. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 1381, et seq. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the parties' submissions, (D.E. No. 9 ("Pl.'s Mov. Br."); D.E. No. 11 ("Def.'s Opp. Br."); D.E. No. 12 ("Pl.'s Reply Br.")), the Court decides this matter without oral argument and, for the reasons set forth below, the Court vacates and remands the decision of the Commissioner.

I. BACKGROUND

On September 17, 2021, Plaintiff filed an application for DIB. (D.E. No. 6, Administrative Record ("Tr.") at 11.) Plaintiff alleged disability starting July 15, 2021. This claim was initially denied on July 25, 2022, and upon reconsideration on September 30, 2022. (Id.) A hearing was held before Administrative Law Judge ("ALJ") Beth Shillin on August 2, 2023, and on October 23, 2023, the ALJ issued a decision determining that Plaintiff was not disabled under the Act because, given Plaintiff's residual functional capacity ("RFC"), Plaintiff remained capable of performing jobs existing in significant numbers in the national economy. Plaintiff sought review of the ALJ's decision from the Appeals Council. After the Appeals Council denied Plaintiff's request on February 21, 2024, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the October 2023 decision, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. (Tr. at 14.) At step four, the ALJ found that Plaintiff had the RFC to perform light work with certain limitations. (Id. at 16.) The ALJ also found that Plaintiff was unable to perform her past relevant work. (Id. at 22.) At step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform. Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. On appeal, Plaintiff alleges that the ALJ erred in: (i) weighing the evidence; (ii) finding that Plaintiff did not meet or equal any of the Listings at step three; (iii) finding that Plaintiff could perform light work; and (iv) considering Plaintiff's statements about her symptoms.

II. LEGAL STANDARD

This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services,

841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla" of evidence but may be less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The Supreme Court reaffirmed this in Biestek v. Berryhill, 587 U.S. 97, 103 (2019). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

### III. DISCUSSION

On appeal, Plaintiff challenges the ALJ's findings at step three. At this step, the ALJ determined that Plaintiff did not meet or equal Listing 12.04, "Depressive, bipolar and related disorders." (Tr. at 15.) To meet or equal Listing 12.04, a combination of criteria under either paragraphs A and B or A and C must be met. Paragraph B requires an:

> [e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. 404, Subpt. P, App. 1, 12.04.

Here, the ALJ found that Plaintiff did not meet the requirements of Listing 12.04, in part, because Plaintiff did not satisfy the paragraph B criteria. In summarizing the medical evidence, the ALJ stated that, during a medication management visit from October 29, 2021, Plaintiff denied experiencing any hallucinations and ideas of reference. (Tr. at 15.) The ALJ further indicated

3

that there was no "evidence of delusions," and Plaintiff's impulse control, "insight and judgment were fair." (Id.) The ALJ stated that, during a consultative psychiatric evaluation in July 2022, Plaintiff "felt the television was talking about her, but denied hearing voices currently." (Id. at 15, 582-86.) The ALJ further noted that, during the evaluation, Plaintiff "stated that she had good memory, attention and concentration," her thought processes were logical, and despite having short term recall issues, "it was noted that her long term memory was fair." (Id. at 15.) The ALJ also noted that various treatment records from Trinitas Regional Medical Center "consistently showed no memory issues." (Id. at 15-16, 772-821.) In assessing the limitations of the paragraph B criteria in light of the medical evidence, the ALJ determined that Plaintiff had only mild limitations in three of the four areas of mental functioning—understand, remember, or apply information, adapt or manage oneself, and concentrate, persist, or maintain pace—and a moderate limitation in interacting with others. (Tr. at 15-16.) As the ALJ found that Plaintiff did not have one extreme limitation or two marked limitations in the relevant areas of mental functioning, the ALJ concluded that the paragraph B criteria of Listing 12.04 had not been satisfied. (Id. at 16.)

Plaintiff argues that the ALJ erred at step three in failing to analyze Listing 12.03, "Schizophrenia spectrum and other psychotic disorders," despite the fact that Plaintiff had been diagnosed with schizoaffective disorder bipolar type by her treating doctor, Dr. Piyush Taparia, and Advanced Practice Nurse Polake Akintunde. (Pl.'s Mov. Br. at 23-28.) Plaintiff had also been diagnosed with "psychoses" by consultative examiner Dr. Zulfiqar Rajput. (Id.) Plaintiff contends that the evidence supports a finding that she meets Listing 12.03 and, more specifically, "the evidence throughout the record provides substantial evidence that she satisfies" the paragraph B criteria.[1] (Id. at 24.) In opposition, the Commissioner asserts that, although the ALJ did not

---

[1] Listings 12.03 and 12.04 share the same paragraph B criteria.

4

discuss Listing 12.03, the ALJ did not err because she determined that Plaintiff did not meet Listing 12.04, which requires the same severity findings as Listing 12.03. (Def.'s Opp. Br. at 16-17.)

Upon review of the evidence and the ALJ's decision, the Court vacates and remands the decision of the Commissioner on three grounds. First, the Court finds that the ALJ has not adequately explained her reasoning for the step three determination to permit meaningful judicial review. An ALJ need not "use particular language or adhere to a particular format in conducting [her] analysis," so long as "there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). If the ALJ fails to satisfy this baseline requirement, the appropriate recourse is to vacate the decision and remand the matter for further analysis. See Burnett v. Commissioner of SSA, 220 F.3d 112, 120 (3d Cir. 2000).

Here, given that the ALJ did not discuss Listing 12.03, the ALJ's decision necessarily does not contain any explanation of her reasoning about Listing 12.03 sufficient to enable meaningful judicial review. Indeed, the decision gives no explanation of why the ALJ concluded, from the evidence of record, that Plaintiff did not meet or equal Listing 12.03 at step three, and there is simply no way for this Court to engage in judicial review of a crucial determination that was entirely omitted from the ALJ's written decision. Plaintiff notes that, during the hearing before the ALJ on August 2, 2023, counsel for Plaintiff asked that Listing 12.03 be considered, as Plaintiff had been diagnosed with schizoaffective disorder bipolar type. (Pl.'s Mov. Br. at 23; Tr. at 44.) Shortly after the hearing, Nurse Akintunde, one of Plaintiff's treating nurses, completed a report in which she opined that Plaintiff met the criteria of this listing. (Tr. at 822.) With respect to schizophrenia spectrum and other psychotic disorders, Nurse Akintunde found that there was medical documentation of Plaintiff's delusions or hallucinations, disorganized thinking, and

5

grossly disorganized behavior to satisfy the paragraph A criteria. (Id.) Nurse Akintunde also indicated that Plaintiff had extreme limitations in all four areas of mental functioning under the paragraph B criteria. (Id.; Pl.'s Mov. Br. at 24; Pl.'s Reply Br. at 9.)

Despite the request that Listing 12.03 be considered, and the submission of Nurse Akintunde's report supporting a finding that Plaintiff meets this listing, the ALJ's decision is silent about Listing 12.03 at step three. The Court is thus presented with a case in which Plaintiff presented a specific argument that she met the requirements of a Listing, supported by medical evidence, but the ALJ ignored it. This Court cannot review a material determination that is omitted from the ALJ's decision. Pursuant to Burnett, the decision must be vacated and remanded so that this error can be redressed. As the decision stands, the Court is unable to review whether the ALJ failed to consider Listing 12.03 and Nurse Akintunde's opinion for "no reason or the wrong reason." See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Second, this matter will be vacated and remanded because the ALJ has not followed Social Security Ruling ("SSR") 17-2p. SSR 17-2p notes that "[i]f an individual has an impairment(s) that does not meet all of the requirements of a listing, we then determine whether the individual's impairment(s) medically equals a listed impairment." SSR 17-2P, 2017 WL 3928306 (S.S.A. Mar. 27, 2017). Therefore, once the ALJ determined that Plaintiff did not meet the requirements of Listing 12.04, she was then required to determine whether Plaintiff's impairments medically equaled a listed impairment, such as Listing 12.03. Here, however, the ALJ appears to have ended the analysis after finding that Plaintiff did not meet Listing 12.04, and did not consider other listings.

The Commissioner argues that the ALJ did not err because, although the ALJ did not discuss Listing 12.03, the ALJ determined that Plaintiff did not meet Listing 12.04, which requires the same severity findings as Listing 12.03. (Def.'s Opp. Br. at 16-17.) Although the paragraph B criteria of Listings 12.03 and 12.04 are the same, contrary to the Commissioner's assertion, this does not mean that a finding that Plaintiff does not meet the B criteria of Listing 12.04 also means that Plaintiff does not meet the criteria of Listing 12.03.[2] The two are separate Listings and they are different.

SSR 17-2p also provides that an ALJ "must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing." SSR 17-2P, 2017 WL 3928306 (S.S.A. Mar. 27, 2017). "Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." Id. Here, as already explained, the ALJ failed to provide any statement about Listing 12.03 that might constitute sufficient articulation. Because the ALJ overlooked Listing 12.03, this Court cannot review whether the requirements of SSR 17-2p were met in regard to Listing 12.03.

Third, the Court finds that substantial evidence does not support the ALJ's step three determination that the paragraph B criteria of Listing 12.04 had not been met. As discussed, paragraph B requires that a claimant's mental impairments result in at least one extreme or two marked limitations in four areas of mental functioning. The levels of limitations are:

    a. *No limitation (or none).* You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
    b. *Mild limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

---

[2] Moreover, the ALJ erred in the analysis of Listing 12.04; the determination that a claimant does not meet the B criteria is not sufficient to conclude that that Listing is not met.

> c. *Moderate limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
> d. *Marked limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> e. *Extreme limitation.* You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2.

With respect to Listing 12.04, the ALJ found that the requirements of the paragraph B criteria had not been met. The ALJ's discussion of the paragraph B criteria is as follows:

> In regard to understanding, remembering and applying, I find [Plaintiff] to have only mild limitations and note that the records at Exhibit 7F [from Trinitas Regional Medical Center] consistently showed no memory issues, and even though she had some recall issues after delay, the examiner noted fair long-term memory. In addition, the claimant reported to a consultative examiner that her memory was good. In regard to the ability to adapt and manage oneself, there were only mild limitations, as the claimant was raising her baby on her own (with her mother's help) and did not seem to be having difficulty with the tasks needed. She said that she did not get along with people, and therefore, I find she has moderate limitations in regard to interacting with others, and have assess a residual functional capacity with no interaction with the general public. As far as concentration, persistence and pace, the claimant reported to a consultative examiner that her attention and concentration were good. Even the claimant's therapist noted only a slight concentration issue, and was able to easily be redirected thus I find only mild limitation in this area as well.

(Tr. at 15-16.)

The ALJ's determination at step three is not supported by substantial evidence because it appears the ALJ overlooked the general instructions set forth in the Listings that apply to every mental disorder Listing. First, the instructions provide that "the greatest degree of limitation of any part of the area of mental functioning directs the rating of limitation of that whole area of mental functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F3. In other words, an ALJ

8

assigns a limitation for each of the four mental functioning areas of the paragraph B criteria based on the claimant's most severe level of mental functioning within that area, not their best or most optimal level of mental functioning.

Here, however, the ALJ appears to have entirely overlooked this requirement. For example, the ability to "understand, remember, or apply information" under paragraph B refers to "the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. 404, Subpt. P, App. 1, 12.00E1. This includes "using reason and judgment to make work-related decisions." Id. As justification for finding that Plaintiff had only a mild limitation in this area, meaning Plaintiff's mental functioning is only "slightly limited," the ALJ stated that Plaintiff reported to have good memory to consultative examiner Dr. Rajput, and her treatment records from Trinitas Regional Medical Center "consistently showed no memory issues." (Tr. at 15.) However, in Dr. Rajput's report, he noted that Plaintiff's short-term memory is poor as she was unable to recall anything out of three after 5 minutes. (Id. at 584.) In the assessment of severity prognosis and recommendations section of his report, Dr. Rajput further indicated that Plaintiff "has a problem with her long and short term memory" and her "long term prognosis is guarded." (Id. at 585.) Plaintiff also indicated to Dr. Rajput that she saw shadows at night which went away with medication. (Id. at 15.) Plaintiff's treatment records from Trinitas Regional Medical Center also indicate that on multiple occasions, one as recent as June 26, 2023, Plaintiff "report[ed] [hearing] weird whizzes noises at times whenever she is alone" and continued "to avoid TV shows/movies for fear of feeling like someone is talking to her." (Tr. at 773.) Thus, the Court questions how the ALJ found that at Plaintiff's "greatest degree of limitation," she is only slightly limited in her ability to understand, remember, or apply information, *i.e.*, use reason and judgment to make work-related decisions, given she has poor short-term memory, her long-term memory prognosis is

9

guarded, and even at her best level of mental functioning, indications of psychosis continued. 20 C.F.R. 404, Subt. P, App. 1, 12.00.

The ALJ also overlooked another general instruction for the mental disorder Listings. When evaluating mental disorders "involving exacerbations and remissions," an ALJ will:

> ***consider how often you have exacerbations and remissions, how long they last, what causes your mental disorder to worsen or improve***, and any other relevant information. We will assess any limitation of the affected paragraph B area(s) of mental functioning using the rating scale for the paragraph B criteria. We will consider ***whether you can use the area of mental functioning on a regular and continuing basis*** (8 hours a day, 5 days a week, or an equivalent work schedule). We will not find that you are able to work solely because you have a period(s) of improvement (remission), or that you are disabled solely because you have a period of worsening (exacerbation), of your mental disorder.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F4 (emphasis added). As discussed, a limitation in an area of mental functioning under paragraph B means that a claimant is able to "function in this area independently, appropriately, effectively, ***and on a sustained basis***" at the determined limitation level. Id. § 12.00F2 (emphasis added). If a claimant has a mental disorder involving exacerbations or remissions, she may be able to function at a higher level at work for a certain period of time, but "[r]ecurrence or worsening of symptoms and signs [] can interfere enough to render [a claimant] unable to sustain the work." Id. § 12.00F4. Thus, when evaluating the paragraph B criteria, an ALJ "will not find that [a claimant is] able to work solely because [she has] a period(s) of improvement(remission)." Id.

However, it appears the ALJ did just this. It appears that the ALJ assessed Plaintiff's levels of mental functioning during a period of remission, rather than, as discussed above, on her greatest degree of limitation. Indeed, the ALJ reasoned that Plaintiff had only a mild limitation in understanding, remembering, or applying information because she reported to have good memory

to consultative examiner Dr. Rajput and the treatment records from Trinitas Regional Medical Center "consistently showed no memory issues" (Tr. at 15-16.)  However, the record as a whole demonstrates that Plaintiff's ability to understand or apply information is not only "slightly limited" as Plaintiff is not free of psychotic thinking on a sustained basis.  Rather, the record indicates that Plaintiff's level of mental functioning is quite variable.

Plaintiff has a history of going on and off medications since 2019.  Following an emergency room visit in May 2020, Plaintiff did not seek mental health treatment again until September 2021.  (Tr. at 19.)  During this time, Plaintiff "reported that she wanted to restart her medication due to reemergence and worsening of symptoms" as she had been experiencing hallucinations, ideas of reference, irritability and mood swings.  (Id.)  She "admitted she had not taken psychotropic medications for almost one year." (Id.)  A September 24, 2021 treatment note from Plaintiff's then-treating doctor, Dr. Piyush Taparia, indicated that Plaintiff had been having hallucinations, including "a voice telling her to 'stop it' and giving her commands to kill herself." (Id. at 308-11.)  A treatment note from October 8, 2021, indicated that Plaintiff continued to experience olfactory hallucinations in which she smelled things that others do not and it was noted that she "still cannot watch TV as she feels like they are talking to her." (Id. at 343.)  Plaintiff stopped taking Depakote medication due to pregnancy in November 2021.  (Tr. at 19.)  Although the record shows that Plaintiff denied experiencing hallucinations and delusions later on, treatment records from 2022 indicate that she continued "to avoid TV shows/movies for fear of feeling like someone is talking to her[.]" (Id. at 326, 593.)

During a July 2022 consultative examination, Dr. Rajput diagnosed Plaintiff with psychoses and noted that Plaintiff feels as if "the TV was talking about her," she "sees shadows at night," and "at times it was noticed that she was smiling for no apparent reason." (Id. at 582-84.)

11

Plaintiff "described having symptoms including loss of interest in doing things, no motivation, feelings of sadness and depression, getting annoyed easily and not getting along with people[.]" (Id. at 15.) After giving birth, Plaintiff "continued to have some symptoms" and restarted Depakote medication in August 2022. (Id. at 20.)

Records from November 2022 show that Plaintiff continued to have audio and visual hallucinations, as she reported "see[ing] rabbits on the TV," and was observed to have paranoia. (Id. at 812, 814.) A June 26, 2023 treatment note by Nurse Akintunde, regarding Plaintiff's schizoaffective disorder, indicated that although Plaintiff denied having hallucinations, she still reported "weird whizzes noises at times whenever she is alone" and continued "to avoid TV shows/movies for fear of feeling like someone is talking to her." (Tr. at 773.) At the August 2023 hearing before the ALJ, Plaintiff also indicated that she continues to experience hallucinations. (Id. at 18.) Plaintiff testified that her hallucinations involved "both seeing and smelling" and one such hallucination occurred earlier during the day of the hearing. (Id.) Plaintiff also testified to hearing clicking noises. (Id.)

Therefore, given the continued indications of Plaintiff's psychosis, even at the hearing before the ALJ, including hearing a voice telling her to kill herself in 2021, olfactory hallucinations in 2022 and 2023, and her avoidance of TV for fear of feeling as if the TV was speaking to her, the Court does not find that substantial evidence supports the determination that Plaintiff's mental functioning in this area ***on a sustained basis*** is only slightly limited. 20 C.F.R. 404, Subt. P, App. 1, 12.00E1. The ALJ did not properly evaluate the evidence according to the instructions contained in the mental disorder Listings.

The same reasoning applies to the three remaining areas of mental functioning under the paragraph B criteria. The ability to adapt and manage oneself "refers to the abilities to regulate

12

emotions, control behavior, and maintain well-being in a work setting" such as "distinguishing between acceptable and unacceptable work performance" and "setting realistic goals." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4. The ALJ found that Plaintiff had only a mild limitation in this area because she was "raising her baby on her own (with her mother's help) and did not seem to be having difficulty with the tasks needed." (Tr. at 15-16.) The ALJ's reasoning demonstrates that, rather than "consider[ing] how often [Plaintiff has] exacerbations and remissions, how long they last," or "whether [she] can use the area of mental functioning on a regular and continuing basis" the ALJ assessed Plaintiff's mild limitation "solely because [she had] a period(s) of improvement(remission)," contrary to the instructions. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F4. The record indicates that over a two-year period, Plaintiff had been on and off medication, experienced various symptoms including seeing rabbits on TV, smelling sweet smells, hearing noises, seeing shadows at night, and Plaintiff was noted to have a "loss of interest in doing things, no motivation, feelings of sadness and depression, [and] getting annoyed easily[.]" (Tr. at 15.) Given the evidence, the Court finds that it is likely that the ALJ assessed a mild limitation in this area based on Plaintiff's best level of mental functioning, rather than her most severe. Furthermore, although the ALJ stated that notes through March 16, 2022, indicated that Plaintiff "continued to do well" and "had no relapses in psychotic symptoms," even since stopping medication, this is incorrect. (Id. at 19.) As already noted, Plaintiff admitted to hallucinations on the day of the hearing before the ALJ. Indications of Plaintiff's psychological impairments continued, including a diagnosis of psychoses by Dr. Rajput in July 2022. (Id. at 582-84.) Moreover, while Plaintiff was off medication between September 2021 and August 2022, she reported sometimes still feeling aggressive and avoided watching TV out of fear of feeling as if the TV was speaking to her. (Id. at 593-94.) Thus, the Court is unable to ascertain how the ALJ

13

determined that Plaintiff's ability to adapt and manage herself, *i.e.*, regulate her emotions and control her behavior, "independently, appropriately, effectively, ***and on a sustained basis***" is only "slightly limited" given evidence of Plaintiff's continued psychoses and varying symptoms. 20 C.F.R. 404, Subpt. P, App. 1, 12.00F2 (emphasis added).

Similarly, the ALJ found that Plaintiff had a moderate limitation in her ability to "interact with others," meaning her ability to function in this area "independently, appropriately, effectively, and on a sustained basis is fair," because Plaintiff "said that she did not get along with people[.]" (Tr. at 16.) However, as defined in the regulations, this area of mental functioning refers to "the abilities to relate to and work with supervisors, co-workers, and the public" such as "keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E2. The Court questions how the ALJ determined that Plaintiff is only slightly limited in keeping social interactions free of sensitivity or suspiciousness if at Plaintiff's best level of mental functioning, she avoids watching TV "for fear of feeling like someone is talking to her[.]" (Tr. at 773, 779.)

Moreover, although the ALJ found that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace, the evidence seems at odds with this finding. The ability to concentrate, persist, or maintain pace means "to focus attention on work activities and stay on task at a sustained rate" such as "working at an appropriate and consistent pace" and "ignoring or avoiding distractions while working." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E3. The ALJ found that Plaintiff was only slightly limited in this area because she reported to a consultative examiner "that her attention and concentration were good" and her therapist "noted only a slight concentration issue" as well. (Tr. at 16.) However, the Court is not persuaded that Plaintiff's statements and her therapist's findings are "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, that Plaintiff's most severe level of limitation in focusing attention and staying on task is only "slightly limited" given Plaintiff reported a loss of interest in doing things, experiences periods of irritability and aggressiveness, sees rabbits on her TV, and hears whizzing noises when she is alone. Given the varying level of Plaintiff's symptoms between 2021 and 2023, the same evidence also does not support a finding that Plaintiff's ability to perform the activities within this mental functioning area on a sustained basis is mild.

In short, in light of the varied evidence of Plaintiff's psychological impairments between 2021 and 2023, the Court is unable to find that substantial evidence supports the ALJ's determination with respect to the paragraph B criteria for Listing 12.04. In essence, the Commissioner contends that the ALJ's decision is supported by substantial evidence because despite Plaintiff's past hallucinations and delusions, Plaintiff's mental functioning has progressed with medication. (Def.'s Opp. Br. at 14-17; Tr. at 15-16, 22.) However, as discussed, the record demonstrates that even at Plaintiff's best level of mental functioning, there continued to be indications of psychotic problems and the evidence of Plaintiff's history does not support the contention that she can maintain a non-psychotic level of functioning on a sustained basis.

Therefore, the Court vacates and remands the Commissioner's decision on three grounds. First, the ALJ's decision does not contain sufficient explanation of the step three determination to permit meaningful judicial review. Second, the ALJ's step three analysis failed to comply with SSR 17-2p. Third, the ALJ's finding that Plaintiff did not meet or equal Listing 12.04 is not supported by substantial evidence.[3]

---

[3] Although the Court vacates and remands the decision of the Commissioner based on the prejudicial errors discussed, the Court notes that the ALJ seems to have overlooked additional, important pieces of evidence. At step four, the ALJ found that Plaintiff retained the RFC to perform light work with certain limitations. (Tr. at 16.) In support, the ALJ noted that consultative

IV. **CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision is not supported by substantial evidence and the decision of the Commissioner is vacated and remanded for further proceedings in accordance with this Opinion. As this matter is remanded, the Court need not reach Plaintiff's additional arguments.

s/Stanley R. Chesler<br>STANLEY R. CHESLER, U.S.D.J.

Dated: July 8, 2025

---

examiner Dr. Rajput, "gave no opinion regarding the claimant's ability to perform work-related activities." (Id. at 22.) However, as discussed, the ALJ failed to note that in the same report, Dr. Rajput's primary diagnosis of Plaintiff was psychoses. (Id. at 584.) Plaintiff's treatment records also indicate a diagnosis of schizoaffective disorder. The Court has concerns about how evidence of Plaintiff's serious psychological impairments does not appear to have been addressed or reconciled in any meaningful way by the ALJ in assessing Plaintiff's ability to work. This Court, however, vacates the decision of the Commissioner based on the prejudicial errors at step three.